MAYOR OF CAMBRIDGE *vs.* RAILROAD COMMISSIONERS.
SAME *vs.* SAME.

Suffolk.    January 14, 15, 1908. — February 28, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Boston Elevated Railway Company.    Cambridge.    Statute.*

Under St. 1906, c. 520, authorizing the Boston Elevated Railway Company to construct a subway or subways in the city of Cambridge, the mayor of Cambridge has no part in determining the number of stations in the subway.    His only authority in regard to stations is given by § 13 of the act, which provides for his approval of locations of the "subway stations at convenient points, with suitable exits and approaches to and from the streets and such stations," referring only to the exact location and manner of construction of the stations which are to be built under a plan of the railway company which has received the approval of the railroad commissioners, and the determination of the mayor in regard to the matters which are to be approved by him being made subject by § 14 to revision by the railroad commissioners "if such determination when made is not satisfactory to the company."

LORING, J.    St. 1906, c. 520, was enacted on June 23, 1906. It was subsequently accepted by the city of Cambridge, and on June 29, 1906, it was accepted by the Boston Elevated Railway Company, which for convenience we shall speak of as the company.

On June 28, 1907, the company, in compliance with the provisions of § 3, filed with the city engineer of Cambridge a plan " showing the proposed route or location " of the subway and the " general form and method of construction [thereof] with the location of proposed tracks and stations and approaches."    The number of stations shown on this plan was two.

The mayor of Cambridge was notified of the filing of the plan, and his approval of it requested as required by § 3.

On July 23, 1907, the mayor sent to the company a communication disapproving the plan in several matters, and in particular because in his opinion there should be four if not five, in place of two, stations. Further, the mayor stated that by the terms of a " special section " (meaning § 13) the location of stations was to be determined by him, and that " without such approval of the mayor the suggested locations of stations upon the plan in question adds nothing to the plan, and to that extent brings nothing before the railroad commissioners for their approval."

On July 29, 1907, the company filed this plan with the board of railroad commissioners, and applied to the board in writing to have it approved or altered in accordance with § 3. The company in this application stated that if the communication of the mayor dated July 23 was to be taken to be a determination by him of any question arising under St. 1906, c. 520, which he was authorized to determine, the application then filed was to be taken to be an application for a revision thereof under § 14 of that act.

The board set down this application for hearing on September 11. At the hearing on September 11, the mayor, by the city solicitor acting as his counsel," objected to any further hearing upon the ground that no subway stations had been located, and that there was no appeal from the action of the mayor upon the location of subway stations, with their exits and approaches, his authority upon that question being exclusive ; that the board had no right, in the absence of the approval of the location of stations by the mayor, to consider the matter of stations in connection with the plan as filed, and that the other features of the plan were so connected with the location of stations that it was impracticable for the board to proceed with the hearing upon that plan at all until the stations had been located with the approval of the mayor of the city of Cambridge."

At this hearing a further question was raised, namely, whether the mayor had or had not exercised fully the authority given him by § 13. The hearing was then adjourned until September 17.

On September 16 a formal application was made to the mayor by the company, asking him to approve the location of the two stations shown on the plan then on file in the office of the rail-

road commissioners, together with suitable exits and approaches. Accompanying this application the company sent to the mayor a letter in which it stated that this petition was sent to him in accordance with the understanding had at the hearing on September 11, in order that action might be taken on it and the matter come before the board at the adjourned hearing to be held on the next day, September 17. The company further stated that they had intended to delay the application to the mayor for the approval of the stations until detailed plans could be made, and that the present course of action was taken to expedite the hearing before the board.

To this communication the mayor made no answer. The hearing was adjourned to September 20, and then to October 10.

On October 6 the petition and suit now before us were brought.*

The petition is a petition for a writ of prohibition asking that the railroad commissioners may be forbidden to proceed with the hearing. The suit is a suit in equity, brought under § 31 of the act, (St. 1906, c. 520,) to have the commissioners enjoined from further proceeding with it.

Both are founded on the contention of the mayor, which already has been stated, that he has the sole and final authority to locate the stations, and that until the location of stations with their exits and approaches has been fixed by him, the time has not come for filing a plan and procuring the approval or alteration of it by the railroad commissioners.

If the petitioner's is the true construction of St. 1906, c. 520, the building of this subway (which the mayor stated and truly stated in his letter of July 23 to be only "primarily" for the benefit of the citizens of Cambridge), is dependent upon the railway company's being willing to accept the mayor's determination, (first) as to how many stations are to be built, and (second) as to the exits and approaches to them. The second (the exits and approaches) is a matter of secondary importance in this connection. On the face of the matter it would be strange if the Legislature intended the building of this subway to be dependent upon the mayor of Cambridge coming to a just

---

* Both cases were reserved for determination by the full court.

determination on the number of stations.   But when it is considered that the number of stations goes to the root of the whole problem, the result is stranger still.   The number of stations does go to the root of the problem because it depends upon the kind of service to be rendered.   It depends upon whether there is to be local service only or through service only, or a combination of the two, and if a combination of the two, how that combination is to be worked out.   These are matters which the Legislature had no reason to suppose would be best determined by a mayor of a city.

We find nothing, however, in the act which bears out the mayor's contention.

By § 3 a plan is to be filed with the railroad commissioners, within a year after the acceptance of the act by the company, and before the work of construction is begun, for their approval or alteration, " whether the mayor has or has not approved " it. This plan is to show " the proposed route or location . . . and . . . the general form and method of construction . . . with the location of proposed tracks and stations and approaches," and the board, after notice and hearing, " shall approve such plan or alter the same in such manner as it may deem necessary."

So far as the matter of stations enters into the general problem, it is to be submitted to the railroad commissioners at this time and is to be decided by them after hearing.   When that has been done, the time has come for the company to submit to the mayor under § 13 the exact location of the stations which are to be built under the plan which has then received the approval of the railroad commissioners, having regard to the question of these stations being at convenient points and to their having suitable exits and approaches to and from the streets.

Further, to prevent the possibility of a deadlock in the matter, if the mayor determines not to approve under § 13 what the public convenience requires should be approved, an appeal is given by § 14 from that determination to the railroad commissioners.

We are therefore of opinion that it is the duty of the railroad commissioners to proceed with the hearing on the petition of the company filed on July 29, 1907.   In view of the conclu-

sion to which we have come on the merits there is no occasion to consider the questions of remedy which have been argued in the cases now before us.

The entry must be

*Petition for prohibition denied; bill in equity dismissed.*

*G. A. A. Pevey,* for the petitioner.

*D. Malone,* Attorney General, *& F. B. Greenhalge,* Assistant Attorney General, for the railroad commissioners.

*F. E. Snow,* for the Boston Elevated Railway Company as *amicus curiae.*